Good morning. On behalf of the Painters and Allied Trades District Council 36, Plaintiff and Appellant in this case, I'm Ellen Greenstone. May it please the Court. Deception and concealment are the hallmarks of an alter ego case. Let me ask you what's on my mind so you can educate me. Alter ego doctrine in labor law is different from alter ego doctrine in some other areas of law. It has a purpose, and the purpose is to keep a unionized company from evading its duties under the collective bargaining agreement to the union by creating a nonunion shop to bid low, work cheaper, and pay the men less. It seems to me that in this case what you've got is a nonunion shop, and even if you assume for purposes of discussion that the nonunion shop completely dominates the union shop and that it created the union shop, just assuming that for purposes of discussion, they weren't trying to evade the purposes of a collective bargaining agreement. They were trying to get into one and have a union shop to do Davis-Bacon and little Davis-Bacon work and pay scale. So it seems like alter ego doctrine ought to just cut off right there because the second requirement for it, the sham effort to avoid collective bargaining obligations, isn't there. Educate me. All right. Let me back up first of all and say that the law in this circuit is settled, that the pre-existence of a nonunion contractor who then forms a union shop is not determinative. Which case are you talking about? I'm talking about Brickmason's versus Industrial Fence. In that case, the nonunion contractor pre-existed the union contractor by 12 years. That was a case in which it came up to the circuit in a different way from it did. I didn't think that one helped you any. It pre-existed. And in NorCal, the court said that the alter ego doctrine applies to simultaneous operation of both the nonunion and union company. Hold on. Back up to Brickmason's. Where's the good part? I didn't remember that as helping it. All right. In Brickmason's, on page 1337, 839 Fed 2nd, page 1337. On 1337. They say it's not an alter ego in that case. Despite the obviously close relationship between the two firms, the trial court's finding that they are not alter egos for labor law purposes is not clearly erroneous. One of the factors then was Harris, the nonunion company was formed 12 years before Industrial, the union, which indicates that Harris was not created for the purpose of shifting a portion of the work. Yeah, that's why I remember the Brickmason's was bad for you. And then it cites footnote 2. Footnote 2 cites to a footnote 8, actually, in Pratt's Farnsworth decision from the Fifth Circuit, in which the court says that the prior existence of the non-signatory is not necessarily dispositive. Okay. So what you've got from Brickmason's is they hold it's not an alter ego for labor law purposes. They further hold that the fact that the nonunion company was formed first tends to indicate that the union company was not created or that it was not created, the nonunion company was not created to shift work to a nonunion company. And then they have a footnote saying the Fifth Circuit has said it's not necessarily dispositive. Correct. Okay. What's the next thing you've got that works in your favor? The First Circuit has also decided a reverse case. That's the C.E.K. mechanical industrial case. And in that case, that was a court affirmance of a board, an NLRB decision, in which the only, the nonunion company formed the union company, and the only evidence that, there was only a small piece of evidence of fraud in that case. The only motive-related factor relied on by the board was that the owner used obstructionist tactics in failing to respond to union requests for information on the nature of the relationship between the companies. And that demonstrated anti-union animus. And I would call your attention to the Pratt-Farnsworth case. Did they hold that alter ego doctrine applied? Yes, they did. In fact, the administrative law judge held that there was no alter ego relationship, in part because the nonunion company preexisted. The NLRB reversed that finding and found alter ego, and the First Circuit upheld the decision. Here, the NLRB hasn't been involved, right? The NLRB has not been involved, but the standards are the same. Counsel, I'm still struggling with something I think that Judge Kleinfeld asked you up front, which is, what's the problem here? We have more union representation. If anything that you say is correct about the relationship between Rodin and Southern California Painters, the bottom line is you've got more union folks working than you did before. So why would you want to discourage this kind of practice? In fact, that didn't happen, because the only jobs, Rodin limited Southern California Painting to jobs that had to be performed to union, where general contractors or government entity or a manager of a building specified union labor. Those jobs would have gone to a union contractor, nonetheless. That was a wash in terms of the number of jobs. There were not more union jobs. What happened was... But we do have more union employers, right, as a result of this. Again, crediting all of your theories about how and why Southern California Painters was formed, the bottom line is you have more union employers than you did before. But you have less competition. You have a different competition because a union employer competes for both work that has to be performed union and non-union work. They have to go out and compete in the same big marketplace. It depends. As I recall, the reason this union shop was created was they want to bid on some jobs where the general says all subs have to be union. Correct. So the non-union shops do not get to compete with the union shops. But what happened in this case was because Rodin had an unlawful relationship with Southern California Painting, Rodin restricted Southern California Painting only to union work and shifted all other work that came out of that relationship that didn't have to be performed union, shifted all that work to itself. Was there any? All the while it was subsidizing Southern California Painting. When Rodin bid on work on behalf of Southern California Painting, it bid on what it took to get the job away from other union contractors. Was there any subcontracting going on between Rodin and? Yes. There is evidence that there is evidence on these two occasions. What kind of evidence? Rodin performed work on a Southern California Painting job at night. When Rodin workers worked for Southern California Painting, they were paid off the books in cash. And when Southern California Painting employees worked for Rodin, they were paid off the books in cash. You have evidence on that? That evidence was submitted. You're not talking about the floor buffing, the buffing, are you? It was work that should have been done union. I remember on the buffing, Southern California Painting called the hall, and they said, send us over some workers. And the hall said, we don't have any who can do that. Even if that were true, the workers … Is there any reason to think that's not true? I thought that that was the uncontradicted evidence. I don't believe they did call the hall. But even if that were true, the workers they ultimately employed, no matter where they got them, had to be paid under the union. And what would be due to the union if they were union workers under the CBE or CBA? Only after they were brought up in charges and fined, they paid that. They never, even through that proceedings, disclosed … You're saying only after. You're saying that's true. They called the hall. They said, send us some union men. And the hall says, nobody here can do that stuff. So they hire some non-union men. And then the union says, we want the money as though they were union men. And then they pay. Is that right? No, not exactly. It's incorrect in two respects. One, it's disputed that they called the hall. But even if they had called the hall, no matter where a union contractor gets employees, they have to be employed under the union contract. They have to be paid. They have to be reported to the trust funds. All of their hours, all of it. That never happened. And even through the charges, Southern California Painting never disclosed its relationship with Rodin to the union. Thank you, counsel. You've gone over your time, but why don't you take notes anyway, because we'll give you one minute for rebuttal despite that. Counsel. Counsel, please proceed. Thank you. Good morning, Your Honors. John J. Sturmreiter, Brown, Brown & Class, counsel for Appley Rodin & Company, Inc. I would like to begin perhaps with one of the last statements that was made by counsel in her address to this court, which is that it was disputed that they called the hall. That is not correct. In the Central District of California, they require a statement of genuine issues by the opposing party and a statement of uncontroverted facts. The statement of genuine issues must respond to the first statement. Why don't you just get right to the excerpt citation? Item number 43 was our statement, and it's marked uncontroverted, and it is at page 3183 in the defendant's excerpts of record. And that was, as I said, it was uncontroverted that the union could not supply, did not supply people who had the skill to put it on. The text is, SEP Superintendent Marlon de Leon called the union about a month before starting the job and asked for painters who knew how to apply scuff master, but the union dispatcher had never heard of it. She referred Mr. de Leon to another union person who thought scuff master was a floor finish. The painters ultimately supplied by the union knew nothing about the product. That is our statement of fact number 43, and it is expressly marked as uncontroverted. Could you talk about that CEA case? I'm not familiar with it. There's CEK from the First Circuit that your adversary cited. CEK is a case from the board, and the key fact there is that it is a board case and is subject to the board's scope of review. Now, the scope of review is very narrow. The language of the opinion indicates that the court was troubled by the results but said, well, it's within the board's determination. Well, we don't have that here, so the real holding is that they're affirming a board determination, as a matter of fact, based on the limited scope of review. That does not advance the union's position. It was a Chevron deference case? I don't recall that offhand, Your Honor, and I don't want to speculate on it. The second point I'd like to state is that the argument is based on the proposition that Rodin limited SCP, but I believe there is no evidence in the record, and my recollection of the evidence in the record is that the testimony is that SCP was the one that made the determination it would be only union. There was no evidence to show that Rodin made that determination as distinct from the officer of SCP. I think the court has very correctly focused on the key question here, which is the application of the sham effort standard set forth in the local 343 case, with which this court is undoubtedly familiar, a member of this court having been on the panel that decided it. The alter ego theory requires the evidence of the use of a non-union company in a sham effort. That's straight out of local 343. And it also refers to the proposition that element of fraud or misrepresentation exists, and it says, finally, an explanation that alter ego is designed, quote, to prevent employers from escaping their collective bargaining obligations by shifting work to non-union firms they also own. So it's the shifting of work is a key point. The court recently explained and applied that case in Operating Engineers Pension Trust v. Patowski. 247 Federal Appendix 862 decided on August 1, 2000. You're citing an unpublished case. It's an unpublished case, but that is now citable under the amendment to Rule 32.1 Federal Rules of Appellate Procedure, because it's a post-January 1, 1987 case. And it said that the second element of local 343, which is used to describe in the terms of anti-union animus, using some of the language from it, required a showing that the company was created or operated to avoid an existing obligation or to shift work away from the union firm. And it's not shown if the operation of the company does not deprive the union of the benefit of its bargain. And here there is absolutely flat evidence that it just didn't occur. The union conceded that no jobs were shifted to roting. Quote, plaintiff does not contend that were it not for the matters alleged in the complaint, the jobs which went to roting in the company, Inc., would have gone to Southern California Painting, Inc. That's the response to a discovery request. That's in defendant's excerpts at 2174-75. The union's witnesses all testified to the same effect, that the jobs weren't shifted. Look at excerpts 2174-75, and we can see that it's uncontradicted that no jobs were shifted. Yeah, it's absolutely uncontradicted. And the union has basically conceded that in its reply brief where they say, this is not a case where the union company interpreted it wanted to skirt its existing responsibilities under collective bargain agreement and therefore creates a non-union company to which to funnel work. That's at page 12, I believe, of the reply brief, which is fatal to their theory under Local 343. Instead, their argument is an effort not to complain about the actions of Southern California Painting, but to use that as a springboard to force Rodin itself to be unionized. Their theory is that, well, Rodin is avoiding potential obligations. But if that's simply the proposition that Rodin doesn't want to be unionized and is avoiding being unionized, that's not illegal. That kind of avoidance is not – does not trigger alter ego. That's apparent from a case called Vacala 1, Chicago District Council Carpenters v. Vacala Masonry, Inc., 946 F. Supp., at page 618, where the argument was made that, well, the non-union employer is avoiding being unionized. And they said that's not the type that the alter ego doctrine is designed to prevent. It's designed to prevent a signatory company from using a non-signatory company to dodge the signatory's obligations under a CBA. It was not intended to be used as a method of coercing a non-union company into becoming a union company by requiring it to sign a collective bargaining agreement or by requiring it to comply with the terms of a collective bargaining agreement, which it never signed, absent proof that the non-signatory company was being used by the signatory to avoid its collective bargaining agreement obligations. That's a language straight out of the case. That is the case which, by the way, the district court looked to as well. The district court looked to the Vacala case as in its decision in this matter. Their own argument does not support them. The only case they tried to use for reverse alter ego, which is Pratt-Farnsworth, 690F2nd, at page 508, note 8, says that an old company could be used by deliberately shifting all the signatory's work away to the non-signatory and leaving the signatory as an empty shell. Again, that's not happened here. That's not the case here. That's not even contended to be the case here. There ultimately simply is no evidence and there is no tribal issue of fact as to the sham effort element. On the question of the tick master job, we've already alluded to the proposition that the evidence shows the uncontroverted facts about the intent, which shows that it was ‑‑ there was a reason for using nonunion workers. And, in fact, the union concedes that under those circumstances, nonunion workers can be used. That is at the union's fact number 229, defendant's excerpts of record 3191. 3191? Yes. 3191? 3191. Thank you. And in that case, what we had is there was, in the same building, there was union work and nonunion work. Roden was doing nonunion work and, for working for an entirely different employer, Southern California Painting was doing union work. And the almost overriding fact about this is that even if you took the arguments at face value, they wouldn't get you there under Patelsky. Because the Patelsky decision states that isolated incidents of employees working for both firms, quote, standing alone are not sufficient evidence of a calculated scheme to siphon union employees into nonunion work. And in Patelsky, those facts weren't enough to avoid summary judgment. Patelsky is a ‑‑ the recent case by the Ninth Circuit is a summary judgment case upholding summary judgment. And that case should be applied, and the summary judgment should be upheld here.  I'd like to make several quick points. I stand corrected on the fact 43 about calling the hall. About what? About calling the hall on the ticketmaster job. That fact is uncontroverted at the summary judgment stage. However, there was no admission in this case that jobs were not submitted. That was a contention in prerogatory answered at the very beginning of the case. And discovery and fact showed that jobs were shifted. On that ticketmaster job, and Judge Goodwin, in answer to your question, a second job that was shifted, when the lawsuit was filed and Rodin put Southern California Painting out of business, Rodin finished a job and to do so separately signed a contract, a subcontract, to take over Southern California Painting's contract, and Rodin affirmed that it was a union contract, or when in fact it was not. That stands in the record. With respect to the shifting of work, that's not an absolute standard. You're past your time, so you want to wrap it up. Thank you. Thank you. And the law in this circuit is clearly that the preexistence of a nonunion contractor who forms a union contractor is a factor, not a determinant. We believe that the union was at least entitled to a trial on all of those issues instead of a summary judgment motion that was made orally from the bench for all practical purposes on the fly. Thank you. Thank you, Counsel. Southern California Painters v. Rodin is submitted, and we'll hear Allen v. Pacific Maritime Association.
judges: Goodwin, Kleinfeld, Bybee